UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IRMA T. JUSTINIANO f/k/a VASQUEZ,

                Plaintiff,

        v.                                DECISION
                                           and ORDER
MICHAEL J. ASTRUE, Commissioner        07-CV-6221CJS
of Social Security

                Defendant.

---

## INTRODUCTION

Plaintiff Irma T. Justiniano ("Justiniano"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied her application for disability insurance benefits and supplemental income security benefits. Specifically, Justiniano alleges that the decision of an Administrative Law Judge ("ALJ"), which denied her continuing benefits after February 28, 2006, was erroneous and not supported by the substantial evidence contained in the record, or was contrary to law.

On the other hand, the Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings. For the reasons stated below, the Court denies the Commissioner's application, grants Plaintiff's motion, and remands the case pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

By application dated December 3, 2003, and signed on December 4, 2003 (Record at 52-54), plaintiff Irma Justiniano, under her maiden name of Vasquez, then aged 22 years old, concurrently applied for Social Security disability and supplemental income security benefits. She claimed that she has been unable to work as of

November 21, 2003, because of "a fractured tail bone" and that "[i]f I sit or stand for a long period of time, I get a lot of back pain." (Record at 65.) Justiniano's application was denied on July 1, 2004. Thereafter, Justiniano requested an administrative hearing before an ALJ. The hearing took place on August 27, 2004, at which time Justiniano was represented by Carol A. McKenna, Esq.

In a decision dated November 16, 2006, ALJ Eric L. Glazer found that, "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on December 3, 2003, the claimant was disabled under sections 216(i) and 223(d) of the Social Security Act, beginning on December 3, 2003 and ending on[1] February 28, 2006." (Record at 26.) Justiniano's appeal to the Social Security Appeals Board of that portion of the ALJ's decision denying her benefits after February 28, 2006, was denied on March 2, 2007, and on May 2, 2007, she filed this action.

## DISCUSSION

I.   Jurisdiction and Scope of Review

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v NLRB*, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. *See*, *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The Court is also

---

[1] The Court presumes the benefits continued through February 28, 2006, since the ALJ stated on the first page of his decision, "claimant was disabled…from November 21, 2003, *through* February 28, 2006." (Record at 17 (emphasis added).)

authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Lynn v. Schweiker*, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The test for evaluating a Rule 12(c) motion is the same as that applicable to a motion for failure to state a claim under Rule 12(b)(6). *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998).

    II.    <u>The Commissioner's decision to deny Plaintiff's Application for Benefits is not supported by the substantial evidence in the record.</u>

Justiniano "challenges only that part of the Commissioner's determination that did not determine her impairment to be disabling after February 2006 but found her able to return to sustained competitive employment." (Pl.'s Mem. of Law at 16-17.) In that regard, the ALJ found that Justiniano possessed the residual functional capacity to perform light work. On this appeal, Justiniano essentially argues that in making such determination, the ALJ "misevaluated" the medical evidence and failed to properly apply the treating physician rule to both her exertional and nonexertional limitations. (Pl.'s Mem. of Law at 15.)

The evidence in the record reveals that since she was 14 years of age, Justiniano has had three emergency room visits for psychological reasons (suicide attempts). One of those visits occurred when she was 15 years old and attempted suicide by jumping out of a second story window, causing a fracture to her "tailbone." (Record at 129.)

Justiniano has held several short-term jobs including baker, file clerk, kitchen prep worker and car wash attendant. (Record at 24.) Her last job was as a bagel baker which required her to lift heavy boxes of frozen bagels. (Record at 92.) She stopped working on November 21, 2003, because her doctor's restrictions on her ability to lift caused her employer to remove her from the work schedule. (Record at 65.)

Justiniano began treating with Ragendra Singh, M.D., on November 8, 2002. During his initial examination, Dr. Singh noted that Justiniano suffered from "tenderness in the lumbosacral spine and dorsal spine [] on flexion, lateral bending movements are painful, but not restricted. Straight leg raising testing within normal limits. [S]he has 5/5 power in lower extremities." (Record at 159.) Dr. Singh prescribed Naprosyn and Vicodin and ordered an x-ray of her lumbosacral spine. (Record at 158.) The x-ray report by John Hurley, M.D., states:

> Comparison made to previous films done 5/1996.
>
> The previously noted 10-15% anterior wedge compression of L1 has healed with some residual loss of vertegral height. No spondlyolisthesis is seen. No acute compression fractures are noted. Disc spaces are maintained.

(Record at 123.) Justiniano returned to Dr. Singh on November 20, 2003, and complained of low back pain. Dr. Singh noted the following on his examination: "some tenderness over the paraspinal muscles and lumbosacral spine and sacroiliac joints. She has scoliosis. Forward flexion and lateral bending movements are painful. Also the rotary movements. Straight leg raising test is up to 40° bilaterally." (Record at 167.) He prescribed ibuprofen, Skelaxin and a requisition for physical therapy "with moist heat, ultrasound massage two times a week for a month." (*Id.*)

On January 15, 2004, Justiniano was seen by Dr. Singh for acute low back pain. Upon examination, Dr. Singh noted, "tenderness over the lumbosacral spine and sacroiliac joints. Paraspinal muscles are tender to palpation. Forward flexion and lateral

bending movements are painful and restricted. Straight leg raising is up to 30° on the right and 40° on the left." (Record at 166.) Dr. Singh switched her to Bextra and continued the Skelaxin, but noted "this does make her drowsy and makes it difficult for her to take care of her children." (Record at 166.)

On February 27, 2004, Dr. Singh saw Justiniano for persistent low back pain. He noted, "tenderness over the lumbosacral spine and sacroiliac joints. Forward flexion and lateral bending movements are painful and restricted. Straight leg raising is up to 20° bilaterally. She has 5/5 power in the lower extremities." (Record at 166.) Dr. Singh prescribed Duragesic patch, an increase in the Bextra, and continuation of Skelaxin. He referred her to Dr. Chris Everett[2] at Strong Memorial Hospital for an evaluation. (*Id.*)

On April 1, 2004, Justiniano again saw Dr. Singh for low back pain. (Record at 164.) On examination, he noted that: she had scoliosis; her paraspinal muscles were tender upon palpatation, especially on the right side; all movements of her spine were painful and restricted; her lumbosacral spine and sacroiliac joints were also tender; her straight leg test was up to 30° bilaterally; and she had 5/5 power in her lower extremities. (*Id.*) Dr. Singh continued Justiniano on Bextra and Skelaxin and prescribed Lexapro to help her sleep and again noted that he would refer her for an orthopedic evaluation. A note in the file immediately following the April 1, 2004, examination, and dated April 21, states, "Dr. E. Clifford—Only takes Workmens Comp."[3] (Record at 164.)

Dr. Singh filled out two forms for the New York Office of Temporary and Disability Assistance, one dated February 24, 2006 (Record at 208-09) and another dated November 8, 2005 (Record at 210-11). In each form, he indicated that Justiniano was moderately limited in the areas of walking, standing and stairs or other climbing, and

---

[2] The index of exhibits in the Record does not show any reports from Dr. Everett.

[3] The Court infers that Dr. E. Clifford was the orthopedist to whom Dr. Singh referred Justiniano.

very limited in the areas of lifting, carrying, pushing, pulling and bending. In the narrative portions of the forms, Dr. Singh wrote that Justiniano had chronic back pain, and that she was unable to work because of her medical problems. In the same reports, however, Dr. Singh indicated that Justiniano had no evidence of any mental limitations.

On May 7, 2004, Dr. Singh prepared a report in support of short-term disability benefits (Record at 212) addressed to Wegmans Food Markets, Inc. Dr. Singh wrote that Justiniano was "unable to work at this time" as a result of low back pain, and that she had been referred to an orthopedic clinic at Strong Hospital.

On October 26, 2006, Eric Rennert, M.D., completed a mental residual functional capacity assessment. (Record at 214-18.) In that assessment, Dr. Rennert checked moderate limitations of functioning in the category of sustained concentration and persistence with regard to: performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Record at 216.) He also noted in the narrative portion of the report,

> Pt [patient] is more limited medically than by psychologically based symptoms. Pt can carry out simple instructions, but reports some difficulty with her focus/concentration. Pt's ability to perform at a consistent pace without rest periods will more likely depend on her medical sx [symptoms]. Pt's depression increases when she is expected to perform physical functions that cause physical pain.

(Record at 216.) The conclusions of one of the consultative examiners, Damel Mangold, M.D., who also completed a mental residual functional capacity assessment, were consistent with Dr. Rennert's assessments. (Record at 142-43.) The other consultative examiner who assessed Justiniano's mental condition was John Thomassen, Ph.D., who did not complete a mental residual functional capacity report, but in his psychiatric

evaluation wrote the following with regard to the area of attention and concentration: "[m]ostly intact as she could perform 5 operations of serial 3s with 1 error." (Record at 140.) Dr. Thomassen concluded that Justiniano "should be able to perform rote tasks and follow simple directions. She is likely to have a fair ability to do complex tasks… [and] have some difficulties relating with co-workers and coping with stress. However, allegations of psychiatric disability were not fully consistent with the examination findings." (Record at 140-41.)

In his medical assessment dated December 14, 2006 (Record at 236-39), Dr. Singh indicated that Justiniano's medications had side effects that limited her activities; that she must lie down during the day; that she could sit for only 30 minutes at one time, and could sit no more than two hours in an eight-hour work day; that she could stand or walk for only 15 minutes before needing to sit down, lie down, or rest; and that she could stand or walk for only one hour in an eight-hour work day. Further, he specifically indicated that she could never lift or carry 20 or 50 pounds, and only rarely lift and carry up to ten pounds. (Record at 238.) Dr. Singh also indicated that Justiniano would need to take unscheduled breaks ten or more times during an eight-hour workday. (*Id*.)

The ALJ's determination that Justiniano could perform the full range of light work (Record at 25) is not supported by substantial evidence in the record. Dr. Singh's medical conclusions should have been given great weight under the treating physician rule. 20 C.F.R. § 404.1527(d)(2)(i) (2006). Dr. Singh indicated as late as December 14, 2006, that Justiniano could not lift 20 or 50 pounds, and only rarely lift and carry 10 pounds. Light work[4] requires the ability to lift no more than 20 pounds at a time, with

---

[4]By contrast, sedentary work is defined as: "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967 (2007)

frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567 (1980). The Commissioner's memorandum focuses on Dr. Sing's October 2003 report in which the doctor indicated that Justiniano should avoid lifting objects weighing more than 20 pounds and avoid repetative bending. (Record at 167; Def.'s Mem. of Law at 18.) The Commissioner also points to Dr. Singh's opinion in November 2005 and February 2006 that Justiniano had no limitation in her ability to sit, and only moderate limitations in her ability to walk and stand. (Record at 208-11; Def.'s Mem. of Law at 18.) The Commissioner concludes that, "[t]hese assessments are reasonably consistent with the ability to perform light work…." (Def.'s Mem. of Law at 18.) Although the consultative examiner, Ramon Medalle, M.D., stated that Justiniano was only moderately limited in lifting (Record at 132), this is inconsistent with Dr. Singh's conclusion made at about the same time in February 2006, and inconsistent with Dr. Singh's December 14, 2006, assessment. In light of Dr. Singh's assessments in February and December, 2006, the record does not support the conclusion that Justiniano can perform the full range of light work.

      Additionally, while the Commissioner relies on a February 28, 2006, examination report by Laura Kilpatrick, LMSW (Record at 199-201; Def.'s Mem. of Law at 20-21), in support of his contention that as of that date, Justiniano was not suffering from any mental limitations, this report is at odds with a subsequent report of treating psychiatrist, Eric Rennert, M.D. In his mental assessment dated October 31, 2006, Dr. Rennert diagnosed Justiniano with "296.31 major depressive disorder–recurrent" and "309.81 post traumatic stress disorder." (Record at 214.) In the category of understanding and memory, he noted only mild limitations (defined as "some mild limitation in this area, but the individual can generally function adequately"). (Record at 215.) With regard to sustained concentration and persistence, he noted moderate limitations (described

above, at 5). He specifically noted, "Pt's depression increases when she is expected to perform physical functions that cause physical pain." (Record at 216.) Ms. Kilpatrick's February 2006 report does not address the areas of functioning assessed by Dr. Rennert in his October 2006 report. Further, it does not address the conflict between Dr. Rennert's assessment and Dr. Singh's and at best provides only background information on Justiniano's plan of treatment, but not her ability to perform work.

## CONCLUSION

In view of the conflicting medical evidence, the need to draw medical conclusions from the information contained in the Record, and the possibility for vocational expert testimony[5] once the Commissioner has properly established Justiniano's residual functional capacity, if any, and determined whether any non exertional limitations apply, the Court cannot remand this case solely for calculation of benefits. Therefore, the Court grants Plaintiff's cross-motion for judgment on the pleadings (Docket No. 7), denies the Commissioner's motion (Docket No. 4) for judgment on the pleadings and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing.

IT IS SO ORDERED.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

Dated:      January 18, 2008
            Rochester, New York

---

[5] "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).